Oliver J. LIND, Plaintiff,

v.

CANADA DRY CORPORATION, a Delaware corporation, Defendant.

No. 3–67 Civ. 182.

United States District Court
D. Minnesota,
Third Division.

April 26, 1968.

Kelly & Finley and Wm. W. Thompson, by James Finley, St. Paul, Minn., for plaintiff.

Baglio & Buckley, by Eugene D. Buckley, St. Paul, Minn., for defendant.

NEVILLE, District Judge.

In this diversity personal injury action, defendant has made a number of pre-trial motions. The court has entered a separate dispositive order.

1. Defendant's first motion is to dismiss for want of jurisdiction because the matter in controversy it claims does not meet the jurisdictional requirement of $10,000.00. Plaintiff's counsel stated in open court that as a result of a rear end automobile collision plaintiff had suffered a total loss of his car in the amount of $950.00; had lost wages in an amount approximating $1,500; had had substantial medical expenses; and now has what he claims to be a permanent injury to the cervical region of his spine and to his lower back. In view of this showing, the court is unable to say to a legal certainty that a verdict of $10,000, or in excess thereof, cannot be returned and sustained. 1 Barron & Holtzoff, Federal Practice and Procedure, § 24 (Wright Ed. 1960). This is not to say that a verdict *in any such amount necessarily will be* returned, but without evidence before the court and in view of the good faith statement of reputable counsel, the court does not feel that it can dismiss for want of jurisdiction on this ground.

2. Defendant's second motion advances the ingenious theory that the court lacks jurisdiction because plaintiff

has not joined as a party defendant one whom he styles as an indispensable party. The action arises out of claimed negligence on the part of the driver of a truck owned and operated by the defendant. There is no dispute but that the defendant corporation is not a citizen of Minnesota for diversity jurisdictional purposes. Defendant argues, however, that if plaintiff had joined the driver of the vehicle as a defendant, rather than proceeding just against the defendant corporation under the doctrine of respondeat superior, then this court would not have diversity jurisdiction by virtue of the fact that the driver is a resident of Minnesota. Counsel has not produced any authority in support of this position. The court is of the view that it cannot on the motion of defendant require the addition of further party defendant, whom plaintiff did not choose to join, and thereby oust the court's jurisdiction. Defendant may have a right over against its driver if he was in fact negligent, but there is no requirement of which this court is aware that plaintiff is compelled when instituting action to sue the driver along with the defendant.

■ 3. Defendant's third request is for an order compelling plaintiff to answer certain interrogatories, specifically questions numbered 18, 31, 32 and 37 thru 40. The court believes these interrogatories are reasonable and proper and that plaintiff should be compelled to furnish answers, specifying at least to April 15th, amounts of money expended or claimed to be lost as a result of the occurrence alleged in his complaint. Claimed medical privilege is not a valid objection to the disclosure of the dollar amount of medical bills and when and with whom incurred.

4. Defendant's fourth request for production of copies of bills showing amounts claimed as special damages is granted for the reasons stated in item number 3 above.

5 and 6. Defendant's next two requests relate to plaintiff's claimed medical privilege. Defendant has had an adverse medical examination of the plaintiff and stated in open court that he has offered and still offers to submit the report thereof to plaintiff if plaintiff will in turn deliver copies of his own medical reports to defendant and waive his medical privilege so as to permit the defendant to interview plaintiff's doctors. Plaintiff has refused so to do. Defendant contends that under the recently amended Minnesota Rules of Civil Procure, specifically rule 35.03, effective February 1, 1968, (and applicable to pending actions—see Rule 86.02) plaintiff has put in issue his physical condition by the bringing of this personal injury lawsuit and that he has thereby waived his medical privilege. Defendant, in opposition, relies on Rule 35 of the Federal Rules of Civil Procedure which has not been so amended and contains no such provision. Federal Rule 35 provides for an adverse medical examination, but by its wording appears to preserve to plaintiff his medical privilege unless under 35(b) (2) plaintiff requests and obtains a copy of the adverse medical report. This he has not done here.

■ Consideration of this issue must start with the premise that there is no Federal law, nor Act of Congress, granting a medical privilege under the circumstances here. To the extent that Federal Rule 35 refers to a privilege, it is referring to that accorded by the law of the several states. It recognizes, first, the right to compel an adverse examination and then removes the privilege (in states where it exists) if a plaintiff requests a copy of the adverse medical report.

Whatever privilege is thereby preserved would seem to depend upon what privilege exists under State law. Federal Rule 35 is not a grant of privilege, but a limit on its exercise. As the court in Leszynski v. Russ, 29 F.R.D. 10, 12 (D.Md.1961) stated in ordering a plaintiff to produce medical records:

"Rule 35 does not imply that there is a medical privilege in all cases. It recognizes that there is a medical privilege in certain jurisdictions, such as the District of Columbia where the privilege exists by statute. There is

**864**

no similar statute applicable to the admiralty and maritime jurisdiction or to federal courts generally."

With respect to those jurisdictions that do recognize the physician-patient privilege, Federal Rule 35 only operates in diversity cases to limit the extent to which such privilege may be asserted.

Addressing then the question of medical privilege afforded under Minnesota law, the newly promulgated Minn.R.Civ. P. 35.03 provides:

"If at any stage of an action a party voluntarily places in controversy the physical, mental or blood condition of himself, of a decedent, or a person under his control, such party thereby waives any privilege he may have in that action regarding the testimony of every person who has examined or may thereafter examine him or the person under his control in respect of the same mental, physical or blood condition."

Presumably the phrase "any privilege he may have" refers to Minn.Stat. § 595.02(4) (1965), which provides in pertinent part:

"A licensed physician or surgeon, or dentist shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity * * *."

■ Thus were this diversity action to be heard by the Minnesota State Court applying state law, the plaintiff herein, by placing his physical condition in issue, would be deemed to have waived his medical privilege, or by implication given his "consent" within the meaning of Minn. Stat. § 595.02(4) (1965) quoted above.

The question here then is whether a different result ought to follow because

this action is a diversity action instituted in Federal Court. It may be argued that the question can be resolved by determining whether the new rule of waiver of privilege in Minnesota is "procedural" or "substantive", under the test of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938); and, further, that since the waiver rule is included within the Minnesota Rules of Civil Procedure, it must follow that such rule is "procedural".[1] However, as stated in 1 Barron & Holtzoff, Federal Practice and Procedure, § 138, at 593 (Wright Ed. 1960):

"* * * it is erroneous to suppose that because a matter is regarded, for example, as "procedural" for purposes of conflict of laws or for determining its validity under the rule-making statute that it must be so regarded for Erie purposes.

Thus cases applying the rule that statutory authority to make rules of procedure for the exercise of jurisdiction is not authority to enlarge that jurisdiction or to modify, abridge, or enlarge the substantive rights of litigants are of little help in deciding Erie problems."

Addressing the "substance" versus "procedure" problem in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court stated at p. 465, 466,

"However, as subsequent cases sharpened the distinction between substance and procedure, the line of cases following Erie diverged markedly from the line construing the Enabling Act. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, made it clear that Erie-type problems were not to be solved

1. This court does not undertake to determine whether the drafters of the amendment to Minnesota Rule 35 in effect repealed Minn.Stat. § 595.02(4) and thus conceivably exceeded authority granted them in the Rule making enabling act, Minnesota Statute 480.051, by not limiting changes to "pleadings, practice and procedure" but going further and in effect repealing substantive law. The tables in appendices B(1) and B(2) to the Minnesota Rules (West Publishing Co. Desk Copy Minn. Rules 1968) mention neither Rule 35 nor Minn.Stat. § 595.02. This court takes amendment 35.03 at its face, however, and rejects this argument.

by reference to any traditional or commonsense substance-procedure distinction:

'And so the question is not whether a statute of limitations is deemed a matter of "procedure" in some sense. The question is * * * does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?' 326 U.S. at 109, 65 S.Ct. at 1470."

In further comment on the *Guaranty Trust* case quoted by the Supreme Court above, the court stated in *Hanna*, at 380 U.S. 468, 85 S.Ct. 1142, that:

"The 'outcome-determination' test [of *Guaranty Trust*] therefore cannot be read without reference to the twin aims of the *Erie* rule: *discouragement of forum-shopping and avoidance of inequitable* administration of the laws." (Emphasis added.)

The Court of Appeals for the Second Circuit recently addressed the "procedure-substance" problem of state rules of privilege in the following language in Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 555, 556 (2nd Cir. 1967):

"Rules of privilege are not mere 'housekeeping' rules which are 'rationally capable of classification as either' substantive or procedural for purposes of applying the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. (1938), see Hanna, 380 U.S. at 472–473, 85 S.Ct. at 1144. Such rules 'affect people's conduct at the stage of primary private activity and should therefore be classified as substantive or quasi-substantive.' Massachusetts Mutual Life Ins. Co. v. Brei, supra, 311 F.2d [463] at 466, [100 A. L.R.2d 634,] quoting from Hart & Wechsler, The Federal Courts and the Federal System 678 (1953).

* * *

Our view that state rules on privilege are substantive for *Erie* purposes is not only supported by reason but also by the weight of authority * * *." (Citations omitted)

In Hill v. Huddleston, 263 F.Supp. 108 (D.Md.1967), the court applied a Maryland waiver of privilege statute similar to the new Minnesota rule 35.03 in compelling a psychiatrist to answer questions upon deposition with regard to the plaintiff's physical and mental condition, stating (at p. 110):

"A federal court in a diversity case should apply the law of privileged communications which would be applied by the courts of the state in which it sits."

■ A ruling herein that the waiver of medical privilege rule in Minnesota applies in Federal cases brought in this jurisdiction by virtue of diversity of citizenship appears to this court to comport fully with the analysis of the Supreme Court in *Hanna*, supra, that discouragement of forum shopping and avoidance of inequitable administration of the laws is at the root of the *Erie* doctrine. There appears to be no Federal policy in favor of affording the confidential relationship of physician and patient a greater degree of privilege in the diversity action brought in Federal Court than the same relationship would enjoy in a state court action in the same jurisdiction.

■ 7. Defendant's seventh request is for copies of plaintiff's income tax returns, since one of the items of damage claimed by plaintiff is loss of earnings. This matter is too well settled to require substantial argument. Karlsson v. Wolfson, 18 F.R.D. 474 (D.Minn.1956). Volk v. Paramount Pictures, 19 F.R.D. 103 (D. Minn.1950). Taylor v. Atchison, Topeka and Santa Fe Ry., 33 F.R.D. 283 (W.D. Mo.1962). Plaintiff is required to produce his income tax returns or copies thereof, at least for the four years, i. e. 1964 and following, and if he does not have the same, plaintiff is required to procure copies from the Federal and State governments or deliver authorizations to defendant's attorney to allow him to obtain such.