# IRENE A. WENNINGER, BY EDWIN A. WENNINGER, HER GUARDIAN AD LITEM, AND ANOTHER v. DR. WILLIAM J. MUESING.

240 N. W. 2d 333.

March 19, 1976—No. 45738.

*Burns & Norha, Patrick Norha,* and *Monte M. Miller,* for petitioners.

*Gislason, Dosland, Hunter & Malecki* and *S. P. Gislason,* for respondent.

*Joseph Burkard, Adrian Herbst, Rischmiller & Wasche,* and *Robert Wm. Rischmiller,* for Minnesota Trial Lawyers Assn., amicus curiae, seeking the writ.

ROGOSHESKE, JUSTICE.

Petition for a writ of prohibition to restrain the district court from enforcing an order granting defendant's motion to direct plaintiffs to provide defendant with an authorization waiving medical privilege with respect to physicians who have examined and treated plaintiff-patient and authorizing defendant's counsel to engage in pretrial discovery of plaintiff's attending physicians by interrogating them in a private and informal interview outside the presence of plaintiffs' counsel.[1] The single issue presented is whether unilateral, private interviews of a patient's attending physicians are contemplated by Rules 35.03 and 35.04, Rules of Civil Procedure, after the mandatory waiver of the privilege pursuant to Rule 35.03. We conclude they are not, and therefore the writ shall issue.

This question arises upon simple and admitted facts. Plaintiffs commenced an action against defendant alleging medical malpractice. As required by Rule 35.03, plaintiffs waived their medical privilege by executing a written waiver supplied by defendant. Upon learning that defendant's counsel intended to interview privately physicians of the Mayo Clinic to whom plaintiff was referred for further treatment, plaintiffs revoked the waiver. Defendant thereupon moved the trial court for an order directing plaintiffs to provide defendant with an appropriate waiver including the right to "interview plaintiff's physicians and surgeons." The trial court granted defendant's motion, and plaintiffs promptly applied to this court for a writ of prohibition. The parties thereupon stipulated that no attempt to enforce the discovery order would be made until its validity was determined by this court.

---

[1] Although the language in the order of the trial court is somewhat ambiguous and open to a different construction, we construe the order to have the meaning stated in the text, since that is how it was received and understood by both parties to this suit.

Minn. St. 595.02(4) defines the scope of the physician-patient privilege in Minnesota and states in relevant part:

"(4) A licensed physician or surgeon, dentist, or chiropractor shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity; * * *."

The privilege between physician and patient belongs to the patient and may be waived only by the patient. Maas v. Laursen, 219 Minn. 461, 18 N. W. 2d 233, 158 A. L. R. 215 (1945). Rule 35.03 mandates the compulsory waiver of this privilege in cases where, as here, the health of the patient is put in issue by the patient himself. It provides:

"If at any stage of an action a party voluntarily places in controversy the physical, mental or blood condition of himself, of a decedent, or a person under his control, such party thereby waives any privilege he may have in that action regarding the testimony of every person who has examined or may thereafter examine him or the person under his control in respect of the same mental, physical or blood condition."

Defendant argues that the required waiver under Rule 35.03 is coextensive with the privilege under Minn. St. 595.02(4) and that defense counsel should be free to interview privately plaintiff's attending physicians since plaintiff, by placing her health in issue, has waived her entire privilege and none remains to be asserted.

Plaintiffs contend that the waiver of Rule 35.03 extends only to written medical records and in certain circumstances a deposition of her attending physicians. Plaintiffs argue that Rules 35.03 and 35.04 must be read in conjunction, and that Rule 35.04 sets forth the exclusive procedure by which defense counsel can obtain information from plaintiff's physicians. Rule 35.04 states:

"When medical privilege has been waived by a party under Rule 35.03, such party within ten days of a written request by any other party,

a)  shall furnish to the requesting party copies of all medical reports previously or thereafter made by any treating or examining medical expert, and

b)  shall provide written authority signed by the party of whom request is made to permit the inspection of all hospital and other medical records, concerning the physical, mental or blood condition of such party as to which privilege has been waived.

"Depositions of treating or examining medical experts shall not be taken except upon order of the court for good cause shown upon motion and notice to the parties and upon such terms as the court may provide.

"Disclosures under this Rule shall include the conclusions of such treating or examining medical expert."

Since private interviews with the physician are not mentioned in Rule 35.04, plaintiffs contend that the required waiver of medical privilege under Rule 35.03 does not contemplate such private interviews.

There is little relevant authority in Minnesota or elsewhere which is helpful in resolving the above issue.[2] Professor James L. Hetland, Jr., states in 2 Youngquist & Blacik, Minnesota Rules Practice, 1968 pocket part, p. 53:

"Rule 35.04 specifies the procedure to be followed by the parties in obtaining medical evidence once medical privilege has been waived. The rule also specifies the method for taking depositions of treating or examining medical experts. With regard to obtaining medical information from the party who has waived

---

[2] The only relevant case law we have found offers little guidance to the proper interpretation of the Minnesota rules at issue here, as defendant acknowledges in his brief. See, Lind v. Canada Dry Corp. 283 F. Supp. 861 (D. Minn. 1968); Callahan v. Burton, 157 Mont. 513, 487 P. 2d 515 (1971); Gailitis v. Bassett, 5 Mich. App. 382, 146 N. W. 2d 708 (1966).

medical privilege, the rule contemplates that normally all medical evidence will be obtained through written reports made by treating or examining medical experts. * * * If the medical reports submitted are not sufficient, the rule does not require the waiving party to authorize the examining party to discuss the matter with the doctor. If the medical reports are not satisfactory, the remedy of the examining party will be to take the deposition of the medical expert under Rule 35.04. Such deposition can be taken only upon a court order upon motion and notice to the parties and upon the showing of good cause. The court may set such terms and conditions to the deposition as it may desire. It is expected that the taking of depositions will be the exception and not the rule. Disclosures, whether by written medical report or by deposition, will include the conclusions of such medical expert."

Professor Hetland later repeats this view in 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 82, and adds:

"* * * [T]he purpose of Rule 35.04 is to provide complete disclosure of relevant medical information. If the party's physician or attorney does not cooperate, the court should not be hesitant to order a deposition. On the other hand, the reason for requiring a court order and a showing of good cause, and permitting the court to condition the order, is to protect the medical profession against unnecessary harassment or involvement in the discovery procedure.

"* * * Protective orders under Rule 30.02 [see new Rule 26.03] continue to be available to the party or to the person examined to limit or condition the nature and extent of the medical disclosures and the scope of deposition where the protection provided in Rule 35.04 is not sufficient. Normally, the protective order should be considered and resolved at the time the court is considering the making of a Rule 35.04 order. If an order is not involved, then Rule 30.02 is the sole remedy. If a controversy arises regarding the extent of the medical waiver or whether or not the waiver includes certain types of physical or mental condi-

tions, the party can refuse to provide the disputed medical reports on grounds of medical privilege. In such event, the inquiring party should seek an order under Rule 37 to compel compliance with the disclosure requirements of Rule 35.04. At the hearing, the court should determine whether or not the medical information relates to the same mental, physical or blood condition as to which privilege has been waived."

Plaintiffs argue that if the rules contemplate that parties may seek protective orders under Rule 26.03 to protect certain information from disclosure under Rule 35.04, then the rules could not have been intended to allow private interviews by defendant's counsel with plaintiff's treating physicians since protective orders would not be effective in such nonadversary interviews.

We are persuaded for the reasons stated below that the procedure for disclosing privileged medical testimony set forth in Rule 35.04 is, and ought to be, the exclusive means by which an adverse party may discover testimony relating to a patient's physical, mental, or blood condition, and we hold that Rules 35.03 and 35.04 in their formulation by the advisory committee and adoption by the court did not contemplate unilateral, private interviews by the inquiring party of the waiving party's treating physician.

The policy underlying Rule 35.03 is the full disclosure of all relevant medical evidence concerning plaintiff's health when he voluntarily puts his health in issue by bringing a lawsuit. Rule 35.04 implements this policy by allowing the adverse party access to this evidence according to an orderly discovery procedure. The procedure defined in Rule 35.04 protects both the patient and his physician from the danger that adverse counsel may abuse his opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history which may neither be relevant to the patient's lawsuit nor lead to the discovery of admissible evidence. In a formal deposition pursuant to Rule 35.04, the presence of a patient's counsel and the availability of protective orders under Rule 26.03

assure that clearly irrelevant medical testimony will not be elicited. Private, nonadversary interviews of the doctor by adverse counsel would offer no such protection to the patient's right of privacy. The presence of the patient's counsel at the doctor's interrogation permits the patient to know what his doctor's testimony is, allays a patient's fears that his doctor may be disclosing personal confidences, and thus helps preserve the complete trust between doctor and patient which is essential to the successful treatment of the patient's condition.

The presence of the patient's attorney during the doctor's examination also helps protect the doctor from unwittingly and improperly disclosing medical information about his patient. We note without deciding that a physician who discloses confidential information about his patient to another in a private interview may be subject to tort liability for breach of his patient's right to privacy or to professional discipline for unprofessional conduct. See, Note, 52 Col. L. Rev. 383; Note, 43 Minn. L. Rev. 943.[3] Under the procedure set forth in Rule 35.04, the physician may rely upon the patient's counsel to keep the questioning, and

---

[3] Several courts in other jurisdictions have recognized that the unauthorized extrajudicial disclosure of information obtained from or about a patient by his physician may constitute a tort unless the disclosure is justified by a superior public interest. Horne v. Patton, 291 Ala. 701, 287 So. 2d 824 (1974); Simonsen v. Swenson, 104 Neb. 224, 177 N. W. 831, 9 A. L. R. 1250 (1920); Smith v. Driscoll, 94 Wash. 441, 162 P. 472 (1917); Clark v. Geraci, 29 Misc. 2d 791, 208 N. Y. S. 2d 564 (1960); Berry v. Moench, 8 Utah 2d 191, 331 P. 2d 814, 73 A. L. R. 2d 315 (1958); Hammonds v. Aetna Cas. & Surety Co. 243 F. Supp. 793 (N. D. Ohio 1965); Hague v. Williams, 37 N. J. 328, 181 A. 2d 345 (1962). But, see, Collins v. Howard, 156 F. Supp. 322 (S. D. Ga. 1957); Quarles v. Sutherland, 215 Tenn. 651, 389 S. W. 2d 249 (1965). The ethics of the medical profession also prescribe the circumstances in which a physician should disclose the confidences of his patient. See, Principles of Medical Ethics, American Medical Association, § 9 (1957). In Minnesota, the State Board of Medical Examiners may suspend or revoke a physician's license to practice medicine if the physician "willfully betrays a professional secret." Minn. St. 147.021, subd. 1(m).

hence his answers, relevant to the matters properly at issue in the lawsuit. Except for the loss of a possible tactical advantage to defense counsel, no other reason has been suggested or occurs to us which would justify exposing doctors to the hazard of potential tort liability for unwarranted disclosures of confidential information in private, nonadversary interviews, and we thus conclude that on balance the procedure defined in Rule 35.04 should be the exclusive means for obtaining access to the medical testimony to which the patient has waived his privilege as required by Rule 35.03.

We do not, however, intend these observations to be interpreted to discourage a physician, with the full permission of the patient and his attorney if he is represented, from affording defense counsel a personal interview. Many cases never reach the litigation stage, and surely if such an interview serves to dispose of a patient's claim before litigation or before a trial on the merits, it should be encouraged.

Let the writ of prohibition issue.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.