**Roger D. BLOHM, et al., Respondents,**

v.

**MINNEAPOLIS UROLOGICAL SURGEONS, P.A., et al., Respondents,**

**Metropolitan Internists, P.A., et al., Petitioners.**

No. C6–88–2515.

Supreme Court of Minnesota.

Dec. 22, 1989.

Robert M. Frazee, Robert E. Salmon, Minneapolis, for petitioners.

Reed K. MacKenzie, MacKenzie & Hallberg, Minneapolis, for Roger D. Blohm, et al.

Donna J. Blazevic, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Minneapolis Urological Surgeons, et al.

SIMONETT, Justice.

This case raises questions about the application of Minn.Stat. § 595.02, subd. 5 (1988), which provides, in medical malpractice actions, for defense counsel to have an "informal discussion" with physicians who have treated plaintiff.

Plaintiff Roger Blohm has sued doctors Kieley and Price,[1] alleging negligent treatment (following cancer surgery) resulting in circulation problems in the lower extremities and the eventual amputation of both legs. The complaint alleges that after treatment for several years by the defen-

---

1. Defendants are Dr. J. Peter Kieley, an internist, and his medical group, Metropolitan Internists, P.A., and Dr. William E. Price, a urologist, and his group, Minneapolis Urological Surgeons, P.A.

Only Dr. Kieley and his group have appealed the trial court's ruling herein. When we refer to Dr. Kieley in this opinion, this should be understood to include also Metropolitan Internists, P.A.

dant doctors, Mr. Blohm had gone to the hospital emergency room one day complaining of leg pain. There he was seen briefly by Dr. G. Fred Peterson, who noted the patient's circulatory problems and complaints and brought them to the attention of other doctors. Amputation surgery thereafter took place.

Suit was commenced in January 1987. In June 1988, discovery being completed, plaintiffs filed their Note of Issue, Certificate of Readiness, and Statement of the Case. Defendants filed their Statements as well, and a pretrial conference with the court was scheduled for October 29, 1988. About a week before the court conference, defendant Kieley gave notice to plaintiff that, pursuant to Minn.Stat. § 595.02, subd. 5 (1988),[2] he would be conducting an "informal discussion" with Dr. G. Fred Peterson, the doctor who had treated plaintiff in the emergency room. At the pretrial conference, plaintiff objected to the discussion taking place with Dr. Peterson. Neither plaintiff nor defendants had named Dr. Peterson as a trial witness.

To frame the issue we are now called upon to decide, defendant Kieley moved for leave to conduct the previously noticed informal discussion with Dr. Peterson. The trial court then denied the motion as untimely, ruling that an "informal discussion" was a form of discovery; that local court rule 2.01 prohibits discovery after the Cer-

tificate of Readiness is filed,[3] and, therefore, defendants could not have an informal discussion with the doctor after the discovery cut-off date.

Dr. Kieley, by writ of prohibition, sought review in the court of appeals, which, in a split decision, affirmed the trial court. *Blohm v. Minneapolis Urological Surgeons, P.A.*, 442 N.W.2d 812 (Minn.App. 1989). We granted Dr. Kieley's petition for further review.

The issue may be stated as follows: Is an "informal discussion" conducted pursuant to section 595.02, subd. 5, a form of discovery and therefore subject to a court rule barring discovery beyond a date certain?

I.

Perhaps this case illustrates that nothing ever remains informal in litigation. In any event, the parties agree that the "informal discussion" statute was enacted in 1986 to give defense counsel easier access to plaintiff's treating physicians.[4] Previously, in *Wenninger v. Muesing*, 307 Minn. 405, 410, 240 N.W.2d 333, 336 (Minn.1976), we held that "Rules 35.03 and 35.04 * * * did not contemplate unilateral, private interviews by the inquiring party of the waiving party's treating physician." We observed, however, that we did not intend to discour-

---

**2.** Minn.Stat. § 595.02, subd. 5 (1988), provides in part:

A party who commences an action for malpractice * * * waives in that action any privilege * * *. This waiver must permit all parties to the action, and their attorneys or authorized representatives, to informally discuss the information or opinion with the health care provider if the provider consents. Prior to an informal discussion with a health care provider, the defendant must mail written notice to the other party at least 15 days before the discussion. The plaintiff's attorney or authorized representative must have the opportunity to be present at any informal discussion. Appropriate medical authorizations permitting discussion must be provided * * *.

A health care provider may refuse to consent to the discussion but, in that event, the party seeking the information or opinion may take the deposition of the health care provider with respect to that information and opinion, without obtaining a prior court order.

**3.** Rule 2.01 of the Fourth Judicial District (Hennepin County) provides:

After a Certificate of Readiness has been filed and any asserted period of non-readiness has expired, further discovery will be permitted only upon order of the judge to whom the case has been assigned.

Some other districts have similar discovery cut-off dates. *See* Rule 4.02 of the Third Judicial District, Rule 11 of the Sixth Judicial District, and Rule 4.08 of the Tenth Judicial District. Currently a Supreme Court Advisory Committee is studying the proliferation of local court rules and the need for statewide uniformity.

**4.** The "informal discussion" statute came from a recommendation in *Report of the Minnesota Commission on Professional Liability*, Minnesota Medical Association, pp. 21–22. *See also Hearings on H.F. 1764 before House Judiciary Committee*, 74th Minn.Leg., First Special Session, Feb. 18, 1986.

age defense counsel from being able to interview a physician if done "with full permission of the patient and his attorney * * *." *Id.* at 412, 240 N.W.2d at 337. It is apparent that the 1986 statute was designed to minimize the difficulties of obtaining an interview by eliminating plaintiff's right to veto. If the treating doctor consents and if 15 days' notice and an opportunity to attend is given plaintiff, defense counsel may informally discuss the case with the doctor. *See* footnote 2, *supra*. Here, as to Dr. Peterson, both conditions were met.[5]

We do not think the "informal discussion" protocol outlined in the statute constitutes a discovery procedure. "Discovery" contemplates the gathering of information under court auspices. If a witness chooses to talk to an attorney, this is not "discovery" as that term is generally understood. Indeed, the very use of the colloquial words "informal" and "discussion" suggests a legislative intent to separate this kind of interview from discovery requiring court assistance or supervision. *Cf. Weaver v. Mann*, 90 F.R.D. 443 (D.N.D.1981) (private communication with plaintiff's doctors is not a method of discovery under the federal rules of procedure).

We conclude, therefore, that a court rule which sets a limitation date for discovery, such as Rule 2.01 of the Fourth Judicial District, does not bar defense counsel from conducting "informal discussions" under section 595.02, subd. 5. If, as in this case, defense counsel wants to interview the physician and the latter has no objection, the discussion is permitted even though the time for discovery has passed. The defendant need not obtain leave of the court to conduct the interview.

5. While section 595.02, subd. 5, says "all parties to the action, and their attorneys" may talk to the doctor, in practice the statute serves to afford defense counsel access to doctors, such as Dr. Peterson, who have treated or are treating the plaintiff and who are nonparty witnesses.

6. Minn.R.Civ.P. 35.04 provides, in part: "Depositions of treating or examining medical experts shall not be taken except upon order of the court for good cause shown upon motion and notice to the parties * * *."

## II.

It is important, we think, to stress the necessity of separating the "informal discussion" portion of section 595.02, subd. 5, from the rest of that subdivision. It is likely, if not probable, that information obtained during the interview will lead to the doctor being called as a trial witness or being deposed, and, accordingly, the remainder of the subdivision provides that if a doctor refuses to consent to a "discussion," counsel may depose the doctor "without obtaining a prior court order."

The fact that an "informal discussion" request may lead to discovery does not mean the discussion itself is a discovery procedure. Should, however, counsel propose to depose the doctor, whether the discussion has occurred or has been refused, then discovery procedures are, of course, applicable.

For example, counsel seeking to depose the doctor after an informal discussion must comply with Minn.R.Civ.P. 35.04 by showing "good cause" and obtaining a court order to depose.[6] If the time period prescribed for discovery by court rule or order has expired, counsel must also persuade the court that there are sufficient grounds to extend the limitation period.

On the other hand, if the doctor has refused to be interviewed, the statute authorizes the taking of the doctor's deposition "without obtaining a prior court order." What does this mean? Arguably, the legislature may have concluded that the doctor's refusal to be interviewed constitutes, on its face, the requisite "good cause" needed to depose, obviating the need for a Rule 35.04 order.[7] This ques-

7. Under this interpretation, it would appear that Rule 35.04 is being legislatively amended, although it would seem from the legislative history of section 595.02, subd. 5, that this was not intended. The question then becomes whether the court rule (requiring good cause and an order) or the statute (an order not required) is to govern. In this case, however, the doctor has not refused an "informal discussion"; consequently, we need not decide an issue not before us. If counsel were to be confronted with this situation, prudence might well suggest that

tion, however, is not before us at this time. We do comment, however, that we have no doubt that any purported statutory forgiveness of the need for a court order does not control a court order or court rule that has limited the time period for discovery. Trial courts have learned by experience that limiting discovery to an established period of time, especially in high volume courts, promotes the administration of justice. It is to be presumed that the legislature did not intend to interfere with the trial court's orderly management of its caseload docket. Dr. Kieley argues a discovery cut-off rule, at least as it might apply to using Dr. Peterson as a trial witness, would be arbitrary and unfair. He does not explain, however, why he did not seek out Dr. Peterson as a trial witness during the period discovery was allowed. As of now, Dr. Kieley has not indicated he proposes to depose Dr. Peterson, although he has filed a supplemental Statement of the Case listing Dr. Peterson as a trial witness. In any event, the local court rule permits a "late" deposition if the trial court believes circumstances warrant. The only point we make here is that section 595.02, subd. 5, need not be, and should not be, construed to subvert court control of pretrial discovery.

In summary: An "informal discussion" by defense counsel with plaintiff's treating doctor is not discovery. But if defense counsel chooses to depose the doctor, the pertinent discovery rules of procedure, of course, become involved. The trial court's order denying defendant Kieley leave to have an informal discussion with Dr. Peterson, which is the only ruling before us, is reversed.

Reversed.

COYNE, J., took no part in the consideration or decision of this case.

counsel comply with Rule 35.04 and seek an order to depose.