**Adrienne GOBUTY and Michael Gobuty, Plaintiffs,**

v.

**Brian F. KAVANAGH, M.D., et al., Defendants.**

**No. Civ. 4–91–380.**

United States District Court, D. Minnesota, Fourth Division.

Jan. 31, 1992.

---

Allan Shapiro, St. Paul, Minn., for plaintiffs.

Creighton Magid, Minneapolis, Minn., for defendants.

## ORDER

FRANKLIN L. NOEL, United States Magistrate Judge.

Defendants seek by this motion to compel plaintiff to execute medical authorizations that permit defendants to conduct *ex parte* interviews with plaintiff's treating doctors. A hearing on the motion was held December 2, 1991. Allan Shapiro, Esq. appeared on behalf of the plaintiffs. Creighton Magid, Esq. appeared on behalf of the defendants.

## PROCEDURAL BACKGROUND

This case is a medical malpractice action brought by the plaintiffs against defendants for an alleged faulty hip replacement. Defendants claim that they are entitled to medical authorizations from the plaintiffs that allow the defendants to conduct *ex parte* interview with any physician that plaintiffs have seen at any time, concerning any malady. Plaintiffs do not oppose executing medical authorizations provided they incorporate the provisions of Minnesota's privilege statute, which requires defendants to give plaintiffs prior notice of the interview *and* the opportunity to be present at the interview with the physician. Minn.Stat. § 595.02, subd. 5.

If the terms of the Minnesota statute are applicable, defendants are not entitled to the authorizations they seek to compel plaintiffs to execute, and their motion must be denied. This court must decide whether the Minnesota privilege statute is enforceable in this federal diversity case.

## ANALYSIS

Minnesota's privilege statute provides that a party who commences an action for malpractice, "waives in the action [the physician-patient privilege] ... as to any information or opinion in the possession of a health care provider who has examined or cared for the party or other person whose health or medical condition has been placed in controversy in the action." Minn.Stat. § 595.02, subd. 5 (hereinafter "subdivision 5"). Subdivision 5 goes on to expressly permit all parties and their attorneys or other authorized representatives to informally discuss the information or opinion with the health care provider if the provider consents, and if the other party is given fifteen (15) days written prior notice and an opportunity to attend the interview. *Id.*

As the instant case is a diversity action in which the law of Minnesota provides the rule of decision, the court concludes that

Minnesota law governs the privilege issue. Fed.R.Evid. 501. The Minnesota statute sets forth the state privilege law applicable to this issue, and clearly establishes that any privilege belonging to plaintiffs was waived by commencement of this action. The statute also authorizes defendants to conduct informal interviews with plaintiff's treating doctors provided they comply with the requirements of subdivision 5. The defendants' proposed medical authorizations do not conform to the requirements of the Minnesota statute, in that the proposed authorizations do not provide fifteen (15) days prior written notice and an opportunity for plaintiff to attend the interview. There appears to this court no reason why plaintiffs should be compelled to execute medical authorizations that confer greater authority upon the defendants than they are entitled to under the applicable law.

Defendants contend that while the existence and waiver of the physician patient privilege is governed by state law, they argue that the balance of Minnesota's privilege statute does not apply in federal court because it is procedural. The undersigned magistrate judge disagrees.

■ The Rules of Decision Act, provides: "The laws of the several states, except when the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases when they apply."

Title 28, United States Code, Section 1652. Under a long line of cases beginning with *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the United States Supreme Court has interpreted the Act to require federal courts in diversity cases to apply state substantive law. Procedural matters are governed by applicable acts of Congress, and the Federal Rules of Civil Procedure and Federal Rules of Evidence.

■ In this case questions pertaining to the physician/patient privilege are governed by the Federal Rules of Evidence. Fed.R.Evid. 501 incorporates by reference the state law. Rule 501 expressly provides that in civil diversity cases, issues of privilege "shall be determined in accordance with state law." *Cerro Gordo Charity v. Fireman's Fund*, 819 F.2d 1471, 1477 (8th Cir.1987) (Fed.R.Evid. 501 dictates that in diversity cases, state privilege law applies).

There is nothing in *Erie* which prohibits a federal procedural rule from incorporating by reference state law even if the adopted state law itself has procedural aspects to it. There is nothing in Fed.R.Evid. 501 which requires the court to make a distinction between a state's substantive privilege law and procedural rules designed to implement it. The rule on its face makes no such distinction, and the court sees no reason in law or logic for distinguishing between substantive and procedural aspects of a state's privilege law when applying Federal Rule of Evidence 501.

Under this analysis there is no need to address the defendants' contention that there is a conflict between the state procedural rules and federal discovery procedure. Under this analysis there literally can be no conflict because the federal procedural rule, Rule 501, incorporates by reference the state statute alleged to be in conflict with the federal law. Plaintiffs are entitled to the protections of the Minnesota statute and defendants' motion to compel them to execute authorizations which do not include the statutory protections must be denied.

In any event even if Rule 501 is not read as incorporating the state's privilege law, but is instead read as a restatement of the Rules of Decision Act, requiring an independent *Erie* analysis of the state's privilege law, the result is the same: the state law must be enforced.

■ Ever since it decided *Erie v. Tompkins*, the Supreme Court has always required federal courts sitting in diversity cases to enforce state law unless the state law directly conflicts with an act of Congress or a federal rule. In *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) the Supreme Court held that if a state law directly conflicts with a federal rule of procedure, the federal court

must apply the federal rule. The *Hanna* Court recognized, however, that if there was no federal rule "which covered the point in dispute, *Erie* commanded the enforcement of state law." *Id.* at 470, 85 S.Ct. at 1143. The Supreme Court reaffirmed this conclusion in *Walker v. Armco,* 446 U.S. 740, 750, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980), when it held that Federal Rule of Civil Procedure 3 (defining commencement of a civil action) did not directly conflict with a state statute which provided that, for the purposes of tolling the statute of limitations, a lawsuit was not commenced until the summons was served on the defendant. As there was no conflict between the state statute and Rule 3, the court held the state statute must be enforced.

In *Filz v. Mayo,* 136 F.R.D. 165, 173 (D.Mn.1991), the district court, addressing the precise issue presently before this court, expressly held that there was no direct conflict between subdivision 5 of Minnesota's privilege statute and any federal rule. The *Filz* court concluded that the Federal Rules of Civil Procedure are silent as to *ex parte* interview with treating physicians. There is no federal rule either prohibiting or permitting such interviews.[1]

With this much of *Filz* the undersigned magistrate judge agrees.

Finding no direct conflict between the state law in question, and any federal procedural rule, the undersigned magistrate judge concludes that under the Supreme Court's opinion in *Walker, supra,* "*Erie* commands enforcement of the state law." 446 U.S. at 750, 100 S.Ct. at 1985, *quoting Hanna v. Plumer, supra* at 470, 85 S.Ct. at 1143.

The *Filz* opinion, however, concludes that, absent a direct conflict between state law and a federal rule, the state law need only be enforced if it meets a two step test which the *Filz* court held was mandated by *Walker.* First, the court must determine whether the state law under consideration is an integral part of a state substantive scheme. Second, application of state law should further at least one of the policy considerations articulated in *Erie:* (1) to discourage forum shopping; or (2) to prevent the inequitable administration of the law. *Filz,* 136 F.R.D. at 173, *citing Walker,* 446 U.S. at 751–753, 100 S.Ct. at 1985–1986.[2] Even if this court were to agree that the *dicta* in *Walker* relied upon by the *Filz* court, created the two step mandatory process articulated in *Filz,*[3] the under-

---

**1.** If there were a direct conflict between a state and federal rule, the federal rule must be applied, unless the rule is beyond the scope of the Rules Enabling Act or the constitutional power of Congress. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**2.** The court in *Filz* determined that Minn.Stat. § 595.02, subd. 5 is not an integral part of the state substantive scheme, and that failure to follow the Minnesota statute will not result in forum shopping or inequitable administration of the law. *Filz,* 136 F.R.D. at 174. The *Filz* court, therefore, compelled execution of medical *authorizations that did not include the protections provided by subdivision 5.* To reach this conclusion the *Filz* court relies on language in the Minnesota's Supreme Court's opinion in *Blohm v. Minneapolis Urological Surgeons,* 449 N.W.2d 168 (Minn.1989). In *Blohm* the Minnesota Supreme Court addressed only the narrow question of whether the informal interviews contemplated by subdivision 5 could be conducted after the time for discovery had expired. To this end, the court decided that the informal interviews allowed under Minn.Stat. § 595.02, Subd. 5 were not a form of discovery. *Blohm v. Minneapolis Urological Surgeons,* 449 N.W.2d

168, 169 (Minn.1989). For the reasons set forth above in the text, this magistrate judge reads *Blohm* differently.

**3.** The Supreme Court's *Walker* opinion concludes that the state's tolling statute at issue there was "an integral part of several policies served by the statute of limitations." The *Walker* opinion also notes that while failure to apply the state law at issue there, might not create any problem of forum shopping, the result would be an inequitable administration of the law. *Walker,* 446 U.S. at 752–53, 100 S.Ct. at 1986. Rather than creating additional tests to be applied to determine whether to follow a state law, this magistrate judge thinks the *Walker dicta* was offered to articulate and explain why the Supreme Court was willing to enforce the state's law relating to commencement of a civil action for statute of limitations purposes, even though it appeared to conflict with the express provisions of a Federal Rule of Civil Procedure. The *dicta,* in other words, elaborates upon the Court's conclusion that Rule 3 of the Federal Rules was simply "not as broad as the losing party urged." *See Walker,* 446 U.S. at 750, 100 S.Ct. at 1985. No such analysis is warranted in this case because defendants have cited no fed-

signed magistrate judge disagrees with how the *Filz* court applied the process to the Minnesota statute at issue here and declines to follow the holding of *Filz*.[4]

In analyzing the first prong of the *Filz* test, it appears to this court that subdivision 5 is an integral part of the state substantive scheme. As noted in *Filz*, prior to the enactment of subdivision 5, plaintiffs could veto *ex parte* interviews with treating physicians. The Minnesota legislature sought to end plaintiff's veto power over *ex parte* interviews by creating a scheme that attempted to accommodate both the defendants' needs and the plaintiffs' rights. While defendants can conduct informal interviews with the consent of the treating physician, plaintiff has the right to be notified of the informal interview prior to its occurrence, and has the right to have counsel present at the interview. The Minnesota Supreme Court recognized the legislative purpose of the scheme developed by subdivision 5:

> It is apparent that the 1986 statute was designed to minimize the difficulties of obtaining an interview by eliminating plaintiff's right to veto. If the treating doctor consents, and if 15 days' notice and an opportunity to attend is given to plaintiff, defense counsel may informally discuss the case with the doctor.

*Blohm v. Minneapolis Urological Surgeons*, 449 N.W.2d 168, 169 (Minn.1989). In reviewing Minn.Stat. § 595.02 as a whole, it is evident that the statute is very carefully crafted, covering many privileged relationships. To take away plaintiff's rights under Minn.Stat. § 595.02, subd. 5 would be to deviate from the very carefully structured statutory scheme the Minnesota legislature enacted.

Under the second prong of the *Filz* test, the court must look to the twin aims of *Erie*, preventing forum shopping and preventing the inequitable administration of the law. *Filz*, 136 F.R.D. at 173. The *Filz* court concludes that failure to adhere to Minnesota's statutory scheme will not result in forum shopping, as plaintiffs will still file their claims in state court.

> "A difference between state and federal informal interview procedures may encourage defendants to remove to federal court, but such removal can hardly be considered impermissible forum shopping for purposes of *Erie* and *Walker*."

*Filz*, 136 F.R.D. at 175. The undersigned concludes that removal of medical malpractice cases by defendants to federal court to gain greater and easier access to treating physicians is exactly the type of forum shopping *Erie* intended to discourage. *See Lind v. Canada Dry Corp.*, 283 F.Supp. 861, 865 (D.Minn.1968).

The undersigned also finds that ignoring the state statute will result in the inequitable administration of the law. Absent a privilege, *ex parte* interviews are available in all types of lawsuits. The relationship between a physician and a patient has been recognized as unique in our legal system. Almost every state recognizes a privilege for communication between doctors

---

eral procedural rule which in any way conflicts with the state law in question. There being no federal rule which covers the point (*ex parte* interviews) this magistrate judge concludes that the *Erie* doctrine commands enforcement of the state law without analyzing whether the law in question is integral to some state substantive scheme, or whether application of the state law would further one of the twin aims of *Erie*.

**4.** In addition to the *Filz* opinion, there are two unpublished orders issued by different judges, which reached opposite conclusions concerning the extent to which Minnesota state law pertaining to the doctor patient privilege should be applied in federal diversity cases. Prior to the adoption of subdivision 5 in its present form the question of *ex parte* interviews with plaintiff's doctors was governed in Minnesota state courts by the Minnesota Supreme Court's decision in *Wenninger v. Muesing*, 240 N.W.2d 333 (Minn. 1976), which held that the Minnesota Rules of Civil Procedure precluded such interviews without the plaintiff's consent. In addressing the question of whether *Wenninger* should be followed in federal diversity cases, Judge Renner adopted the conclusion of a special master that the state law should be followed. *Simon v. G.D. Searle*, Civ. No. 4–80–160 (D.Minn. filed 5/1/ 86). In another case, *Thomsen v. Mayo*, Civ. No. 4–84–1239, Judge Rosenbaum overruled a magistrate's order and refused to apply *Wenninger* in a federal diversity case. As there is disagreement among the district court judges over this issue, the undersigned magistrate judge concludes there is no binding precedent in this district and is therefore making his own independent analysis of the issue.

and their patients. In Minnesota the privilege is governed by the carefully drafted Minnesota statutory scheme, Minn.Stat. § 595.02. One cannot dismiss the protections especially provided for the physician-patient relationship. Failure to follow the Minnesota statutory scheme would result in an inequitable application of the law, with federal defendants and Minnesota state defendants, in the exact same type of action, required to follow different laws simply because one suit is founded on federal diversity of citizenship.

In *Lind v. Canada Dry Corp.*, 283 F.Supp. 861 (D.Minn.1968), a case decided before subdivision 5 was enacted in its current form, a federal district court in Minnesota held that Minnesota's physician-patient privilege rule must be applied in federal diversity cases to the same extent it would be applied in state court. In *Lind* the plaintiff argued that Federal Rule of Civil Procedure 35, (relating to independent medical exams) unlike its Minnesota counterpart, did not create a waiver of the plaintiff's doctor patient privilege, unless the plaintiff requested a copy of the independent medical report. The *Lind* court analyzed the issue under *Hanna v. Plumer*, and concluded that the Minnesota Rule (which created a waiver regardless of whether plaintiff requested a copy of the independent medical report) must be enforced in diversity cases in federal court, saying:

> [D]iscouragement of forum shopping and avoidance of inequitable administration of the laws is at the root of the *Erie* doctrine. There appears to be no Federal policy in favor of affording the confidential relationship of physician and patient a greater degree of privilege in the diversity action brought in Federal Court than the same relationship would enjoy

in a state court action in the same jurisdiction.

*Lind*, 283 F.Supp. at 865. The same reasoning applies with equal force to the provisions of subdivision 5 at issue in the instant case. There is no reason to allow less protection of the privilege in the federal court than the same relationship would enjoy in state court. To do so would both encourage forum shopping and result in the inequitable administration of the law. Here both of the aims of *Erie* are furthered by adhering to the state statutory scheme.

None of the other cases relied upon by the defendants compel the conclusion that Congress, by adopting Fed.R.Evid. 501, intended only selective enforcement of state privilege law. The court's unpublished decision in *Thomsen v. Mayo Foundation*, 4–84–1239, sheds little light on the issue in the instant case. Decided less than 20 days after the effective date of subdivision 5, the *Thomsen* opinion makes no reference to the statutory scheme for conducting *ex parte* interviews. Apparently the new statute was not brought to the court's attention at the time of the decision.[5] The only issue decided by the *Thomsen* court was whether it must follow the state court's opinion in *Wenninger v. Muesing*, *supra*. Unlike the statute at issue here, which is a substantive legislative expression about the medical privilege, the Minnesota court's opinion in *Wenninger*, considered by the *Thomsen* court, was simply an interpretation of Minnesota's discovery rules, and did not purport to interpret the scope of the privilege.[6] As only a judicial interpretation of a state procedural rule was at issue, the *Thomsen* court had no occasion to consider whether to enforce the state statute at issue here. The *Thomsen* decision therefore adds very little to the analysis of whether, under the *Erie* doc-

---

5. The Historical Note of Minn.Stat. § 595.02 states that "Laws 1986, c. 455, added subd. 5." Subd. 5 became effective August 1, 1986, nineteen (19) days prior to the order in *Thomsen*.

6. In *Wenninger*, the Minnesota Supreme Court held that when a plaintiff's medical privilege is waived in a malpractice action, Minnesota Rules of Civil Procedure 35.04 (relating to depo-

sitions by treating or examining medical experts) provided the exclusive means by which an adverse party may discover testimony relating to the plaintiff's medical condition. Under Rule 35.04 therefore *ex parte* interviews with plaintiff's doctors were not allowed without the plaintiff's permission.

trine, a federal court in a diversity case must enforce the very carefully crafted statutory privilege scheme adopted by the Minnesota legislature. *Carducci v. Mayo Clinic*, C3–86–916, Order (D.Minn. Feb. 24, 1987) merely cites *Thomsen*, without any analysis or consideration of the statute in reaching the decision that the authorizations at issue there should be signed.

Because this court concludes that Minnesota's privilege statute must be enforced in its entirety, plaintiffs cannot be compelled to sign medical authorizations that force them to forego the protections afforded by the Minnesota statute.

Based upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED that:

Defendants' motion to compel plaintiffs to sign medical authorizations is DENIED unless the authorizations conform to the requirements of Minnesota Statute § 595.02 subd. 5.