**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0896**

Anita J. Howard,
Respondent,

vs.

Shelly R. Svoboda, M.D., et al.,
Appellants.

**Filed March 7, 2016
Reversed
Reyes, Judge**

Hennepin County District Court
File No. 27CV1420381

Richard E. Bosse, Law Office of Richard E. Bosse, Chtd., Henning, Minnesota (for respondent)

Paul C. Peterson, William L. Davidson, Amber N. Garry, João C. Medeiros, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota (for appellants)

Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Klaphake, Judge.[*]

## S Y L L A B U S

Under Minn. Stat. § 595.02, subd. 5 (2014), an "informal discussion" with a treating physician who has examined or cared for a party allows inquiry into "any information or opinion" the physician possesses, including opinions on the standard of care and causation relating to periods when the physician was not caring for the patient.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**O P I N I O N**

**REYES**, Judge

This appeal arises out of a medical-malpractice suit and a district court protective order limiting the scope of an "informal discussion" with a treating physician authorized under Minn. Stat. § 595.02, subd. 5. Appellants challenge the order, arguing that the district court erred in interpreting the statute to prevent them from asking about "any information or opinion" of a surgeon who examined and cared for respondent, including opinions he possesses on the standard of care and causation relating to periods when he was not caring for respondent. Because we agree with appellants, we reverse the district court's protective order.

**FACTS**

In 2009, following a motor-vehicle accident and a history of back pain, respondent Anita Howard sought treatment from appellants Dr. Shelly Svoboda and her physician assistant, Christopher Geisler. Appellants ultimately referred respondent to neurological surgeon Dr. Mahmoud Nagib when her back pain would not subside. Dr. Nagib performed back surgery on respondent in August 2009 and treated her until October 2009, when he referred her back to appellants for postoperative care. Following the back surgery, appellants treated respondent from late 2009 through 2010.

In June 2010, respondent awoke unable to move her legs. She went to the emergency room where "a collapse of the T5 and T6" vertebrae causing her complete paraplegia was identified. While she was at the hospital, Dr. Nagib once again examined

2

her.  He concluded that the collapse occurred due to an infection and determined that surgery to correct the paraplegia was too risky.

In 2014, respondent sued appellants, alleging that they failed to diagnose and treat the infection that resulted in her paraplegia.  Appellants requested respondent's authorization for an "informal discussion"[1] with Dr. Nagib pursuant to Minn. Stat. § 595.02, subd. 5.  Initially, respondent provided a signed authorization.  However, a week before the scheduled discussion, respondent wrote to appellants stating that she would "take issue" with any questions "as to standard of care or causation."  Appellants responded the next day stating that they disagreed with this limitation, and, shortly thereafter, respondent revoked her earlier authorization.

The parties submitted cross-motions to the district court.  Respondent moved for a temporary injunction and/or a protective order to limit the scope of the informal discussion, and appellants moved to compel respondent to sign an authorization to allow the informal discussion.  The district court held a hearing and, by order dated April 30, 2015, granted both motions in part.  The district court directed respondent to sign an authorization.[2]  But the district court granted a protective order to preclude appellants

> from using the informal conference under Minn. Stat. § 595.02, subd. 5, to request expert opinions by Dr. Nagib about (a) the standard of care applicable to other medical providers who cared for [respondent] during periods of time when [respondent] was not Dr. Nagib's patient or (b) whether an alleged breach of the standard of care by medical providers other than Dr. Nagib caused injury to [respondent].

[1] An informal discussion is also commonly referred to in practice as an "informal conference."

[2] Respondent does not challenge this ruling by the district court on appeal.

3

This appeal follows.

**ISSUE**

Did the district court abuse its discretion when it issued a protective order preventing appellants from using the informal discussion pursuant to Minn. Stat. § 595.02, subd. 5, to ask Dr. Nagib about any opinions he possessed on the standard of care and causation relating to periods when he was not examining or caring for respondent?

**ANALYSIS**

Appellants contend that the district court erred in interpreting Minn. Stat. § 595.02, subd. 5, to prevent them from asking about "any information or opinion" of Dr. Nagib, including opinions he possesses on the standard of care and causation relating to periods when he was not treating respondent. Respondent contends that the district court did not err because "[t]he plain, unambiguous language of the statute, taken in context describes only information or opinions the doctor has acquired in attending the patient in a professional capacity and which was necessary to enable the professional to act in that capacity" and "[a]ny opinion outside his care is irrelevant." (Emphasis omitted). We agree with appellants.

A district court has broad discretion under Minn. R. Civ. P. 26.03 "to fashion protective orders and to order discovery only on specified terms and conditions." *Erickson v. MacArthur*, 414 N.W.2d 406, 409 (Minn. 1987). Appellate courts "review a district court's order for an abuse of discretion by determining whether the district court made findings unsupported by the evidence or by improperly applying the law." *In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 711 (Minn. 2007).

4

Statutory interpretation is a question of law subject to de novo review. *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015). "The objective of statutory interpretation is to ascertain and effectuate the [l]egislature's intent. If the [l]egislature's intent is clear from the statute's plain and unambiguous language, then we interpret the statute according to its plain meaning without resorting to the canons of statutory construction." *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013) (citations omitted); *see* Minn. Stat. § 645.16 (2014). But if the language of the statute "is susceptible to more than one reasonable interpretation, then the statute is ambiguous and we may consider the canons of statutory construction to ascertain its meaning." *Id.*

Minn. Stat. § 595.02, subd. 1(d) (2014) defines the scope of the physician-patient privilege in Minnesota. The statute, in relevant part, states:

> A licensed physician or surgeon . . . shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity.

Minn. Stat. § 595.02, subd. 1(d). This privilege belongs to the patient and may be waived only by the patient. *Maas v. Laursen*, 219 Minn. 461, 463, 18 N.W.2d 233, 234 (1945). If a party voluntarily places his or her medical condition at issue, such as by initiating a medical-malpractice suit as was done here, the privilege is waived. Minn. R. Civ. P. 35.03.

In 1986, the Minnesota Legislature added subdivision 5 to Minn. Stat. § 595.02 to allow defendants in medical-malpractice suits an opportunity to conduct informal discussions with plaintiffs' treating physicians. *See Blohm v. Minneapolis Urological*

*Surgeons, P.A.*, 449 N.W.2d 168, 169 (Minn. 1989). This subdivision, in relevant part, states:

> A party who commences an action for malpractice . . . against a health care provider[3] on the person's own behalf . . . waives in that action *any* privilege existing under subdivision [1(d)], as to *any information or opinion in the possession of a health care provider who has examined or cared for the party* . . . . This waiver must permit all parties to the action, and their attorneys . . . to informally discuss the information or opinion with the health care provider if the provider consents. . . . Appropriate medical authorizations permitting discussion must be provided by the party commencing the action upon request from any other party.

Minn. Stat. § 595.02, subd. 5 (emphasis added). The purpose of this addition is "to give defense counsel easier access to plaintiff's treating physicians" and "to minimize the difficulties of obtaining an interview by eliminating plaintiff's right to veto." *Blohm*, 449 N.W.2d at 169-70. The Minnesota Supreme Court has held that these discussions are not discovery. *Id.* at 171.

Both parties contend that Minn. Stat. § 595.02, subd. 5, is unambiguous. Although they present different interpretations of the statute, we discern no ambiguity. The plain language of Minn. Stat. § 595.02, subd. 5, waives the patient-physician privilege created in subdivision 1(d) as to "*any* information or opinion in the *possession* of a health care provider who has examined or cared for the party" and allows "the information or opinion" to be "informally discuss[ed]" with any party to the action. (Emphasis added).

---

[3] "'Health care provider' means a physician, surgeon, dentist, or other health care professional or hospital." Minn. Stat. § 595.02, subd. 5. The supreme court has used this term synonymously with "treating physician." *See Blohm*, 449 N.W.2d at 169.

"Possession" is defined as "the state of *having* or owning something." *Pocket Oxford American Dictionary* 638 (2d ed. 2008) (emphasis added). Further, the statute allows "*any* information or opinion" a treating physician possesses or has to be discussed. Minn. Stat. § 595.02, subd. 5 (emphasis added). And notably, the statute contains no temporal limitation as to the time period to which the opinion must relate. *Id.* Therefore, we hold that, if a treating physician who has examined or cared for a party possesses an opinion, including one on the standard of care and causation relating to periods when the physician was not caring for the party, inquiry into the opinion is allowed at the informal discussion under Minn. Stat. § 595.02, subd. 5.

In its protective order interpreting Minn. Stat. § 595.02, subd. 5, the district court stated that an informal discussion "does not extend to asking a treating physician *to form* and disclose opinions critiquing the medical care provided by other medical providers during time periods when the treating physician was not caring for the [patient]." (Emphasis added). It explained that "[s]uch inquiries do not pertain to the information and opinions gained or formed by the treating physician during the treating relationship" and, "[i]nstead, they seek information and opinions formed outside of the treating relationship." The court concluded by stating that "[s]uch opinions would more properly fall with[in] the scope of [Minn. R. Civ. P.] 26.02(e), which governs the discovery and presentation of evidence of expert opinions acquired or developed in anticipation of litigation or for trial."

We agree with the district court that Minn. Stat. § 595.02, subd. 5, does not allow parties to use an informal discussion to ask a treating physician *to form* an opinion at the

7

time of the discussion.  But we conclude that the statute allows a party to ask a treating physician about an opinion the physician already possesses.  Here, Dr. Nagib concluded that the fracture occurred due to an infection.  If he possesses any opinions on the standard of care or causation, then appellants are entitled to inquire about those opinions. *See* Minn. Stat. § 595.02, subd. 5.  Therefore, the district court abused its discretion by issuing a protective order preventing appellants from asking Dr. Nagib about opinions he possesses regarding the standard of care and causation relating to periods when he was not caring for respondent.

Respondent argues, and the district court agreed, that allowing these types of questions to be asked of treating physicians is detrimental to the patient-physician relationship because it essentially turns them into "Rule 26" experts adverse to their own patients.  We are not persuaded.  Informal discussions are not discovery. *Blohm*, 449 N.W.2d at 171.  Therefore, the information obtained during the discussions is not admissible at trial. *See* Minn. R. Civ. P. 26.  In addition, Minn. Stat. § 595.02, subd. 5, allows inquiry of any opinion a treating physician possesses.  But nothing in the statue requires a treating physician to form an opinion.  Minn. Stat. § 595.02, subd. 5. Moreover, Minn. Stat. § 595.02, subd. 5, mandates that "[t]he plaintiff's attorney . . . have the opportunity to be present at any informal discussion," ensuring that the patient's interests are protected and that all parties have access to the information disclosed. *Cf. Wenninger v. Muesing*, 307 Minn. 405, 411, 240 N.W.2d 333, 337 (1976) (stating that "[t]he presence of the patient's counsel at the doctor's interrogation permits the patient to know what his doctor's testimony is, allays a patient's fears that his doctor may be

disclosing personal confidences, and thus helps preserve the complete trust between doctor and patient"), *superseded by statute on other grounds*, Minn. Stat. § 595.02, subd. 5.

Respondent also challenges the constitutionality of Minn. Stat. § 595.02, subd. 5, by arguing that the subdivision is a "usurpation of the rule making powers of the judiciary by the legislature." We disagree. "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional is exercised with extreme caution and only when absolutely necessary. We review the constitutionality of a statute de novo." *State v. Lemmer*, 736 N.W.2d 650, 657 (Minn. 2007).

"When determining whether a statute impermissibly infringes on a judicial function, we examine the nature of the statute. The judicial branch governs procedural matters, while the creation of substantive law is a legislative function." *Id.* A statute "is procedural when it neither creates a new cause of action nor deprives defendant of any defense on the merits[.] . . . [E]videntiary matters and matters of trial and appellate procedure are procedural rules governed by the judicial branch." *Id.* (quotation omitted). Substantive statutes "are those that create, define, and regulate rights." *Id.*

The physician-patient privilege is a statutory creation. *State v. Enebak*, 272 N.W.2d 27, 30 (Minn. 1978); *see* Minn. Stat. § 595.02, subd. 1(d). "The legislature which created the rule also possesses the power to create exceptions to the rule." *Enebak*, 272 N.W.2d at 30. Respondent does not challenge the constitutionality of the underlying privilege, which was created by the legislature. *See id.* Because the informal discussion

authorized under subdivision 5 limits the statutorily created physician-patient privilege, it is constitutional. *See* Minn. Stat. § 595.02, subds. 1(d), 5; *Enebak*, 272 N.W.2d at 30.

## D E C I S I O N

Because an "informal discussion" with a treating physician who has examined or cared for a party authorized under Minn. Stat. § 595.02, subd. 5, allows inquiry into "any information or opinion" the physician possesses, including opinions on the standard of care and causation relating to periods when the physician was not caring for the patient, the district court abused its discretion by issuing a protective order preventing appellants from asking Dr. Nagib about any opinions he may possess.

**Reversed.**