Joyce FILZ and Donald Filz, Plaintiffs,

v.

The MAYO FOUNDATION and
Rochester Methodist Hospital,
Defendants.

Civ. No. 4-89-1087.

United States District Court,
D. Minnesota,
Fourth Division.

April 18, 1991.

Sharon L. Van Dyck, Paul Edmund Godlewski, and Schwebel, Goetz & Sieben, P.A., Joan M. Quade, Barna, Guzy, Merrill, Hynes & Giancola, Minneapolis, Minn., for plaintiffs.

Paul B. Klass, Margaret M. Zverinova, and Dorsey & Whitney, Minneapolis, Minn., for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' Mayo Foundation and Rochester Methodist Hospital ("defendants") appeal of an order of Magistrate Judge Floyd E. Boline dated October 2, 1990. That order denies defendants' motion to compel plaintiff Joyce Filz ("Filz") to sign a medical authorization permitting defendants to conduct ex parte interviews with her treating physicians. Based on a review of the file and record herein, defendants' motion to set aside the magistrate judge's order is granted.

## BACKGROUND

Plaintiffs Joyce and Donald Filz bring this action alleging medical malpractice.[1] Joyce Filz received medical treatment from defendants in 1987 and 1988. She alleges that they negligently failed to diagnose and treat a bowel obstruction and this negligence has resulted in her inability to maintain normal bowel function. After defendants' treatment, Filz was treated by at least one other physician for her alleged medical problems.

Defendants asked Filz to sign a medical authorization permitting defendants to confer privately with her other treating physicians. Filz refused to sign an authorization and defendants brought a motion to compel. Magistrate Judge Boline's order of October 2, 1990 denies defendants' motion to compel but allows defendants to interview Filz's treating physicians in the presence of her counsel; in the alternative, the order permits the defendants to depose her treating physicians. Defendants appeal the entire order because they contend that it denies them equal and open access to Filz's treating physicians.

Defendants further contend that Magistrate Judge Boline's order is contrary to law because it disregards controlling precedent of this district which holds that federal procedural law governs the type of authorization that a plaintiff must sign in a diversity action and that federal law permits ex parte interviews.

Plaintiffs argue that Minnesota privilege law rather than federal procedural rules controls any disputes regarding the scope and protections provided by the physician-patient privilege for federal courts sitting in diversity. Plaintiffs therefore urge the court to apply a recent Minnesota

---

1. Subject matter jurisdiction in this action is based on diversity jurisdiction. Plaintiffs are Wisconsin residents. Defendants are Minnesota residents and the alleged malpractice occurred in Minnesota.

statute that defines procedures for conducting informal interviews with plaintiffs' treating physicians in medical malpractice actions.[2]

## DISCUSSION

■ A district court may modify or set aside any portion of a magistrate judge's order found to be clearly erroneous in fact or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). This appeal presents a vertical choice of law question: whether a defendant in a medical malpractice action brought in federal court pursuant to diversity jurisdiction is bound by the informal interview procedures set forth in Minnesota's statute or whether such interviews are governed by federal procedural rules.[3]

■ Federal law does not provide a physician-patient privilege in diversity actions. *See, e.g., United States v. University Hosp.,* 575 F.Supp. 607, 611 (E.D.N.Y.1983), *aff'd,* 729 F.2d 144 (2d Cir.1984); *In re Grand Jury Subpoena,* 460 F.Supp. 150, 151 (W.D.Mo.1978). Federal courts sitting in diversity consider the existence of the physician-patient privilege substantive for *Erie* purposes and thus state law controls whether federal courts recognize the privilege in such cases. *See, e.g., Pritchard–*

---

2. Plaintiffs also contend that defendants' appeal was untimely. A party has ten days to appeal a nondispositive order of a magistrate judge. Fed.R.Civ.P. 72(a); D.Minn. LR72.1(b)(2). That ten-day period is computed pursuant to Federal Rule of Civil Procedure 6(a), which states:

> (a) Computation. In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute.... When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.

The magistrate judge's order was dated October 2, 1990. In order to comply with Rules 6 and 72, defendants' appeal had to be served on or before October 17, 1990. Defendants' notice of appeal was served on October 16, 1990, the day before the deadline and thus defendants' appeal was timely.

3. This case also raises a horizontal choice of law question: if state law governs the issue and the law of multiple states is implicated, which state's law should apply? A Wisconsin resident entered into confidential communications with a treating physician, also a Wisconsin resident. Confidential communications occurred in Wisconsin under the protection of Wisconsin law. The alleged malpractice occurred in Minnesota. The lawsuit is venued in Minnesota against Minnesota defendants. Under such circumstances, a court generally must determine whether Wisconsin or Minnesota privilege law will apply.

Rule 501 of the Federal Rules of Evidence does not directly address the horizontal choice of law question so its resolution has been left to the courts. Two different approaches have resulted. The first approach dictates that a federal court sitting in diversity applies the same privilege law that the court of the state in which it sits would apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The federal court thus applies the choice of law rules of its resident state to determine which law the state court would apply. *See, e.g., Samuelson v. Susen,* 576 F.2d 546, 550–51 (3d Cir.1978). Other federal courts apply the privilege rules of the state in which they sit without explicitly resorting to the state's choice of law rules, perhaps relying on the general rule that the law of the forum governs the admissibility of evidence. *See Pritchard–Keang Nam Corp.,* 751 F.2d 277, 281 n. 4 (8th Cir.1984) (discussing choice of law in diversity cases and citing *Rosser v. Standard Milling Co.,* 312 S.W.2d 106, 110 (Mo.1958)); *see generally* Note, *Testimonial Privilege: An Analysis of Horizontal Choice of Law Problems,* 61 Minn.L.Rev. 461 (1977); Note, *The Federal Rules of Evidence: Rule 501, Klaxon and the Constitution,* 5 Hofstra L.Rev. 21 (1976).

Interpreting Rule 501 of the Federal Rules of Evidence, the Eighth Circuit recently applied the Minnesota attorney-client privilege statute to an action brought by a Minnesota plaintiff in Minnesota federal court involving privileged communications between an out-of-state corporation and its out-of-state counsel. *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 402 (8th Cir. 1987). The *Simon* opinion did not set forth the analysis it followed in resolving the horizontal choice of law question. *See also Pritchard–Keang Nam Corp.,* 751 F.2d at 281 n. 4 (suggesting that the Eighth Circuit follows the *Klaxon* approach and thus the court should apply Minnesota choice of law rules to determine which state's law of privilege would apply). Plaintiffs concede that the horizontal choice of law question should be resolved in favor of the application of Minnesota privilege law. Defendants do not dispute the application of Minnesota privilege law but do dispute the application of that portion of the Minnesota statute which defines informal interview procedures to be followed in medical malpractice actions, arguing that in a diversity action federal procedural law controls those procedures. Thus, the vertical choice of law question will be analyzed using Minnesota law.

*Keang Nam Corp. v. Jaworski,* 751 F.2d 277, 281 n. 4 (8th Cir.1984); *Lind v. Canada Dry Corp.,* 283 F.Supp. 861, 863–65 (D.Minn.1968).

Federal Rule of Evidence 501 further directs that:

the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law.

Fed.R.Evid. 501. State law thus clearly controls the existence and scope of the physician-patient privilege in diversity actions. Most states have created a physician-patient privilege by statute.[4] Minnesota's statute states that:

A licensed physician or surgeon, dentist, or chiropractor shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired

in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity. ...

Minn.Stat. § 595.02, subd. 1(d) (1988).

■ State law also controls what constitutes a waiver of the physician-patient privilege.[5] *Lind v. Canada Dry Corp.,* 283 F.Supp. 861, 863 (D.Minn.1968). In Minnesota the physician-patient privilege is statutorily waived in medical malpractice actions:

A party who commences an action for malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider on the person's own behalf or in a representative capacity, waives in that action any privilege existing under subdivision 1, paragraphs (d) and (g), as to any information or opinion in the possession of a health care provider who has examined or cared for the party or other person whose health or medical condition has been placed in controversy in the action.

Minn.Stat. § 595.02, subd. 5 (1988).[6] The statute has recently been amended to set

---

**4.** Common law did not recognize a physician-patient testimonial privilege. *State v. Staat,* 291 Minn. 394, 396–97, 192 N.W.2d 192, 195 (1971). Courts thus gave no legal protection to communications between physicians and patients. *See, e.g., State v. Devanney,* 12 Conn.App. 288, 292, 530 A.2d 650, 652–53 (1987) (holding that Connecticut courts may freely admit physicians' testimony about patients because Connecticut had no statutory medical privilege and the common law recognized none). As of 1985, 40 states and the District of Columbia had enacted physician-patient privilege statutes. *Developments in the Law—Privileged Communications,* 98 Harv.L. Rev. 1450, 1532 (1985). Other states have also adopted the privilege in limited circumstances by judicial construction. Note, *Defendants' Right to Conduct Ex Parte Interviews with Treating Physicians in Drug or Medical Device Cases,* 73 Minn.L.Rev. 1451, 1458–59 (1989) [hereinafter Note, *Defendants' Right* ].

**5.** Waiver of the physician-patient privilege may occur in three situations. Most jurisdictions permit patients to expressly waive the privilege, reasoning that patients, rather than physicians, control the privilege. *Maas v. Laursen,* 219 Minn. 461, 463, 18 N.W.2d 233–234 (1945) (holding that patient not physician controls privilege); *Newell v. Newell,* 146 Cal.App.2d 166, 178, 303 P.2d 839, 847 (1956) (requiring an express

waiver to be voluntary and clearly intentional). The privilege may also be waived by statute, as the Minnesota statute does, or courts may imply a waiver. Note, *Defendants' Right, supra* note 4, at 1462–67 (discussing various waivers of the physician-patient privilege); *cf. Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.,* 819 F.2d 1471, 1477 (8th Cir.1987) (holding that Minnesota Rule of Civil Procedure 35.03 merely defines one type of waiver of the physician-patient privilege under Minnesota law, that is when a party voluntarily places in controversy his physical, mental or blood condition).

**6.** Minnesota Rule of Civil Procedure 35.03 further provides that:

If at any stage of an action a party voluntarily places in controversy the physical, mental or blood condition of himself ... such party thereby waives any privilege he may have in that action regarding the testimony of every person who has examined or may thereafter examine him ... in respect of the same mental, physical or blood condition.

The Eighth Circuit recently discussed the history of Minnesota Rule of Civil Procedure 35.03 in *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.,* 819 F.2d 1471 (8th Cir.1987). The court noted that Rule 35.03 was established to eliminate abuse of the physician-patient privi-

out certain procedures that must be followed in medical malpractice actions if a defendant seeks to conduct an informal interview with a treating physician. This section provides:

> This waiver must permit all parties to the action, and their attorneys or authorized representatives, to informally discuss the information or opinion with the health care provider if the provider consents. Prior to an informal discussion with a health care provider, the defendant must mail written notice to the other party at least 15 days before the discussion. The plaintiff's attorney or authorized representative must have the opportunity to be present at any informal discussion. Appropriate medical authorizations permitting discussion must be provided by the party commencing the action upon request from any other party.

> A health care provider may refuse to consent to the discussion but, in that event, the party seeking the information or opinion may take the deposition of the health care provider with respect to that information and opinion, without obtaining a prior court order.

Minn.Stat. § 595.02, subd. 5 (1988) ("subdivision 5"). The issue is whether federal courts sitting in diversity in Minnesota are bound by these procedures.

### Defendants' Contentions

Defendants concede that in diversity actions state law controls the existence and waiver of the physician-patient privilege but argue that federal law controls the methods of discovery permitted once the court determines that the privilege has been waived. *Keller v. Orion Ins. Co.,* 285 F.Supp. 906, 907 (D.Minn.1968). Defendants contend that Filz has waived the physician-patient privilege under subdivision 5 by filing a suit alleging malpractice and that federal procedural law dictates the type of authorization she must sign. Thus defendants seek an order compelling Filz to sign an authorization which would permit them to privately contact her treating physicians without following the procedures set forth in the Minnesota statute.[7]

---

lege. Prior to its adoption, Minnesota law did not recognize an implied waiver of the physician-patient privilege when a patient brought a lawsuit unless it was brought against a doctor for malpractice. *See, e.g., Polin v. St. Paul Union Depot Co.,* 159 Minn. 410, 412, 199 N.W. 87, 87–88 (1924). Thus, a patient could bring a lawsuit alleging personal injuries and even testify at trial regarding those injuries without being deemed to have waived the physician-patient privilege. *Id.* "The abuses that resulted from this development in the law caused the Minnesota Supreme Court on one occasion to disparagingly remark that '[i]nstead of accomplishing the purpose for which [the privilege] was originally intended, the privilege has been so far corrupted today that it is used, at least in personal injury cases, for the most part for the suppression of the truth.'" *Cerro Gordo,* 819 F.2d at 1479 (citing *Nelson v. Ackermann,* 249 Minn. 582, 591, 83 N.W.2d 500, 506 (1957)). The Minnesota Supreme Court emphasized that this misuse provided patients with an unfair advantage. *Nelson, id.* at 592, 83 N.W.2d at 507. Rule 35.03 was promulgated a decade after the *Nelson* case. "Its purpose appears to have been to remove the unfair advantage which had existed in the past by providing that a party who voluntarily places his medical condition in issue waives the privilege.... [i]f anything, it was intended to enlarge the number of cases in which the waiver would be judged to have occurred." *Cerro Gordo,* 819 F.2d at 1479.

7. The Minnesota statute mandates that the patient's attorney be present during any informal interviews between treating physicians and defense counsel. The presence of patient's counsel is deemed to protect the physician-patient privilege by ensuring that communications that remain privileged are not disclosed. *See, e.g., Wenninger v. Muesing,* 307 Minn. 405, 410–11, 240 N.W.2d 333, 336–37 (1976) (reasoning that the presence of a patient's attorney prevents "the danger that adverse counsel may abuse his opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history which may neither be relevant to the patient's lawsuit nor lead to the discovery of admissible evidence"). The presence of patient's counsel, however, undermines one of the main purposes of ex parte interviews: permitting attorneys to conduct discovery without the interference and disruption that opposing counsel's presence may cause. *See, e.g., Vega v. Bloomsburgh,* 427 F.Supp. 593, 595 (D.Mass.1977) (emphasizing the unique value of informal interviews over more formal methods of discovery). Private interviews with treating physicians also permit attorneys to investigate and privately prepare possible defense theories with physicians without revealing to plaintiff's counsel any information entitled to work product protection. *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947) (protecting information gathered during an informal interview as attor-

Defendants characterize the form of authorization requested as procedural because it relates specifically to a method of discovery. Defendants argue that Minnesota law directly conflicts with federal rules because the Minnesota statute limits ex parte contact while the federal rules impose no such limits once a plaintiff waives the medical privilege. If a direct conflict exists between state and federal procedural rules *Erie*, as interpreted in *Hanna v. Plumer*, dictates that the federal procedural rule applies. *Hanna v. Plumer*, 380 U.S. 460, 472–74, 85 S.Ct. 1136, 1144–45, 14 L.Ed.2d 8 (1965); *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 737 n. 5 (8th Cir. 1989) (citing *Hanna*); *Hughes v. Mayo Clinic*, 834 F.2d 713, 715–17 (8th Cir.1987). Although federal courts disagree about the availability of ex parte interviews, defendants argue that all federal courts faced with the question look to federal law to determine if such contact is available. *See,*

*e.g., Thomsen v. Mayo Found.*, No. 4–84–1239, slip op. at 3 (D.Minn. Aug. 20, 1986) (1986 WL 9159) (holding that once a patient waives the physician-patient privilege federal evidentiary law permits ex parte contact); *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 127 (D.D.C.1983) (holding that the Federal Rules of Civil Procedure permit ex parte interviews with treating physicians once patient waives the privilege by filing suit); *Weaver v. Mann*, 90 F.R.D. 443, 445 (D.N.D.1981) (interpreting Federal Rules of Civil Procedure to prohibit private conversations with plaintiff's physicians); *Garner v. Ford Motor Co.*, 61 F.R.D. 22, 23 (D.Alaska 1973) (holding that once physician-patient privilege is waived federal rules control procedures in federal court but federal rules do not permit ex parte interviews). Defendants further rely on prior Minnesota federal district court decisions that have permitted ex parte interviews.[8] Thus they argue Filz must sign an

ney work product); *see generally,* Note, *Defendants' Right, supra* note 4, at 1473–85 (discussing the value of ex parte interviews in all cases in which patients place their physical condition at issue, but explaining the justifications for permitting ex parte interviews which are unique to drug and medical device cases). Despite ex parte interviews' value as discovery tools, courts strongly disagree about whether such interviews should be permitted when the witness is a treating physician. *Compare, e.g., Petrillo v. Syntex Laboratories, Inc.*, 148 Ill.App.3d 581, 610, 102 Ill.Dec. 172, 191, 499 N.E.2d 952, 971 (1986) (holding defense counsel in contempt for conducting ex parte interview with treating physician); *Jepsen v. G.D. Searle & Co.*, No. 4–80–542 (D.Minn. Apr. 16, 1990) (prohibiting ex parte interviews) *with, e.g., Moses v. McWilliams*, 379 Pa.Super.Ct. 150, 161, 549 A.2d 950, 955–56 (1988) (en banc) (permitting ex parte interviews); *Langdon v. Champion*, 745 P.2d 1371, 1373–74 & n. 4 (Alaska 1987) (recognizing that courts may sanction plaintiffs' counsel if they block ex parte interviews thereby forcing defense counsel to get court order to interview patient's treating physician); *see generally,* Note, *Defendants' Right, supra* note 4, at 1471–75 (discussing split in case law concerning ex parte interviews).

**8.** Defendants contend that this district's precedent mandates that the court permit ex parte interviews. In support of this argument, defendants rely on Judge Rosenbaum's decision in *Thomsen v. Mayo Found.*, No. 4–84–1239 (D.Minn. Aug. 20, 1986) (1986 WL 9159). Such reliance is misplaced because *Thomsen* does not

address the informal interview procedures set out in the Minnesota statute. These procedures were added to § 595.02 by the 1986 Minnesota legislature and apply to all actions pending on or commenced on or after the effective date of the amendment. 1986 Minn. Laws ch. 455, § 95. The statute does not specify an effective date and thus under Minn.Stat. § 645.02 the amendment became effective on August 1, 1986. *Thomsen,* although decided nineteen days after the amendment became effective, does not address the new procedures in subdivision 5. Other Minnesota federal district cases have also interpreted federal procedural law to permit ex parte interviews once the physician-patient privilege has been waived. *See, e.g., O'Brien v. Pfizer, Inc.*, No. 3–88–282 (D.Minn. Feb. 21, 1989) (permitting ex parte interviews in a products liability case involving the drug Feldene); *Jenson v. Playtex Family Prod., Inc.*, No. 4–88–908, 1988 WL 235672 (D.Minn. Sept. 19, 1988) (permitting ex parte interviews in a toxic shock syndrome case); *Carducci v. Mayo Clinic*, No. 3–86–916 (D.Minn. Feb. 24, 1987) (magistrate's order permitting ex parte interview in a medical malpractice action, following *Thomsen*); *but see Jepsen v. G.D. Searle & Co.*, No. 4–80–542 (D.Minn. April 16, 1990) (prohibiting ex parte interviews, declining to follow *Thomsen*); *Simon v. G.D. Searle & Co.*, No. 4–80–160 (D.Minn. May 1, 1986) (adopting without opinion a special master's order that applied state law to deny ex parte interviews in a drug case). These cases also do not address the vertical choice of law issue raised by subdivision 5. The statute thus presents an issue not previously

authorization permitting defendants to informally interview her treating physicians without following the procedures in the Minnesota statute.

Plaintiffs' Contentions

Plaintiffs raise two arguments to support the application of state law. Plaintiffs first contend that the safeguards built into subdivision 5 represent a conditional waiver of the physician-patient privilege in medical malpractice suits. The procedures in subdivision 5 place limits on the waiver reflecting a balancing by the Minnesota legislature of the various interests implicated by the physician-patient privilege. The statute permits direct informal access to plaintiffs' physicians because of defendants' pressing need for relevant medical information in medical malpractice actions. Plaintiffs argue that the Minnesota legislature further determined that defendants' need for such information is not so great that it operates to totally waive the protections of the physician-patient privilege. The statute limits defendants' right to informally interview treating physicians in recognition of Minnesota's strong public policy of protecting the physician-patient relationship. *See Wenninger v. Muesing*, 307 Minn. 405, 410–11, 240 N.W.2d 333, 337 (1976) (emphasizing that ex parte interviews do not adequately protect a patient's right of privacy nor preserve the complete trust between a

doctor and patient). If subdivision 5 is characterized as a conditional waiver, plaintiffs argue that it is substantive for purposes of *Erie*, and thus controlled by state law without resort to a *Walker* analysis.[9] *Cf. Lind*, 283 F.Supp. at 865 (holding that waiver of the physician-patient privilege in diversity actions is controlled by state law).

Subdivision 5 may also be viewed as merely providing another tool of discovery that the Minnesota legislature deemed appropriate in medical malpractice actions. Subdivision 5 actually represents a liberalization of Minnesota state law. Prior to its amendment, the Minnesota Supreme Court in *Wenninger v. Muesing* barred all ex parte interviews, absent patients' consent, reasoning that such ex parte interviews may threaten the physician-patient relationship. 307 Minn. 405, 240 N.W.2d 333 (1976). Minnesota law further required defendants to show good cause and obtain a court order prior to deposing treating physicians.[10] Subdivision 5 relaxed the *Wenninger* rule in medical malpractice cases by requiring patients to sign waivers authorizing informal interviews and defining various procedures to be followed. According to the terms of subdivision 5, if a treating physician refuses an informal interview with a defendant, the defendant may depose the physician without obtaining a prior court order.[11]

---

addressed by federal district courts in Minnesota. *Cf.* Note, *Defendants' Right, supra* note 4, at 1469 n. 88 (stating that privilege statutes rarely define which methods of disclosure are permitted once the physician-patient privilege is waived).

**9.** *See infra* discussing *Walker.*

**10.** Before subdivision 5 was amended, a defendant in Minnesota state court was always required to show good cause and obtain a court order before deposing a treating physician under Minnesota Rule of Civil Procedure 35.04. Rule 35.04 states that:

> Depositions of treating or examining medical experts shall not be taken except upon order of the court for good cause shown upon motion and notice to the parties and upon such terms as the court may provide.

A Minnesota district court sitting in diversity rejected the state good cause requirement. *Keller*, 285 F.Supp. at 908 (reasoning that state procedural law conflicted directly with federal rules regarding depositions and that in such

cases the court would apply federal procedural law).

**11.** The Minnesota Supreme Court discussed the apparent conflict between the wording of subdivision 5 and Minnesota Rule of Civil Procedure 35.04. *Blohm v. Minneapolis Urological Surgeons*, 449 N.W.2d 168, 170 & n. 7 (1989) (dicta). If a physician refuses an informal interview, subdivision 5 permits a defendant to depose the physician "without obtaining a prior court order." Minnesota Rule of Civil Procedure 35.04, however, requires both a showing of good cause and a court order prior to the deposition of any treating physician. *See supra* note 10. In discussing this discrepancy, the court observed that "[a]rguably, the legislature may have concluded that the doctor's refusal to be interviewed constitutes, on its face, the requisite "good cause" needed to depose, obviating the need for a Rule 35.04 order." *Id.* at 170. "Under this interpretation, it would appear that Rule 35.04 is being legislatively amended, although it would seem from the legislative history of section 595.02,

The Minnesota Supreme Court characterizes subdivision 5 not as providing critical protection to the physician-patient privilege but rather enacted to "give defense counsel easier access to plaintiff's treating physicians." *Blohm v. Minneapolis Urological Surgeons*, 449 N.W.2d 168, 169 (1989). Subdivision 5 "was designed to minimize the difficulties of obtaining an interview by eliminating plaintiff's right to veto." *Id.* The "informal discussion" protocol outlined in the statute does not rise to the level of formal discovery procedure:

> 'Discovery' contemplates the gathering of information under court auspices. If a witnesses chooses to talk to an attorney, this is not 'discovery' as that term is generally understood. Indeed, the very use of the colloquial words 'informal' and 'discussion' suggests a legislative intent to separate this kind of interview from discovery requiring court assistance or supervision.

*Id.* at 170.[12] Thus, the Minnesota Supreme Court interprets subdivision 5 not as a conditional waiver, or even a formal method of discovery, but rather an extension of the informal information gathering permitted under state law.

Federal courts also have characterized ex parte interviews as a method of informal discovery rather than a conditional waiver of the physician-patient privilege. In *Doe v. Eli Lilly*, the court held that the Federal Rules of Civil Procedure, while providing "certain specific formal methods of acquiring evidence", did not "preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of [a treating physician] who is willing to speak." 99 F.R.D. at 127. Other federal courts interpret the federal rules to prohibit ex parte interviews, *see, e.g., Weaver*, 90 F.R.D. at 445; *Garner*, 61 F.R.D. at 23, but still characterize ex parte interviews as a method of informal discovery to be controlled by federal rather than state law.[13] In various unpublished decisions, the Minnesota federal district courts have also permitted ex parte interviews of treating physicians as a permissible method of informal discovery, both in medical malpractice actions and in other suits where patients have placed their physical condition at issue.[14] The defendants argue that these prior Minnesota district cases are dispositive. Although not dispositive because all the cases were either written prior to the statute, did not address the statute, or were not medical malpractice cases, those cases reflect the overriding purpose of the federal discovery rules: to liberalize discovery to permit the "fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947).

■ Based on the foregoing analysis, prior state and federal decisions support the characterization of ex parte interviews as tools of informal discovery. Plaintiffs' contention that subdivision 5 represents a conditional waiver of the Minnesota physician-patient privilege is rejected and subdivision 5 is deemed procedural for purposes of *Erie*.

■ Plaintiffs contend that if subdivision 5 is procedural, no direct conflict exists between federal and state procedural law, and that only in cases where a direct conflict exists does the court automatically

---

subd. 5, that this was not intended. The question then becomes whether the court rule (requiring good cause and an order) or the statute (an order not required) is to govern." *Id.* at 170 n. 7. The court did not resolve the issue because it was not properly before the court, but noted that "[i]f counsel were to be confronted with this situation, prudence might well suggest that counsel comply with Rule 35.04 and seek an order to depose." *Id.*

**12.** The court thus reasoned that defendants need not comply with deadlines set by Minnesota courts for formal methods of discovery and that defendants "need not obtain leave of the court to conduct [such interviews]." *Id.* at 170–71. If a defendant decides to depose a treating physician, the deposition is deemed court controlled discovery and the defendant must then comply with state discovery rules. *Id.*

**13.** None of those cases involve a state statute like Minn.Stat. § 595.02, subd. 5, which explicitly defines conditions for conducting ex parte interviews.

**14.** *See supra* Note 8 (discussing Minnesota cases).

apply the federal procedural rule, following *Hanna. Walker v. Armco Steel Corp.,* 446 U.S. 740, 749–50, 100 S.Ct. 1978, 1984–85, 64 L.Ed.2d 659 (1980). In situations where there is merely an apparent conflict between state and federal rules of procedure, "the first question must therefore be whether the scope of the Federal Rule in fact is sufficiently broad to control the issue." *Id.* at 749, 100 S.Ct. at 1984. Where there is no federal rule directly on point, the court must apply a two-step process under *Erie* to determine whether state law must be followed.[15] *Walker,* 446 U.S. at 752–53, 100 S.Ct. at 1986. First, the court must determine whether the state law under consideration is an integral part of a state substantive scheme. *Id.* at 751, 100 S.Ct. at 1985. Second, application of state law should further at least one of the policy considerations articulated in *Erie:* (1) to discourage forum shopping; or (2) to prevent the inequitable administration of the law. *Id.* at 751–53, 100 S.Ct. at 1985–86.

No federal procedural rule explicitly permits or prohibits ex parte interviews between defendants and plaintiffs' treating physicians, *see, e.g., Doe,* 99 F.R.D. at 127; *Garner,* 61 F.R.D. at 23. The scope of the federal rules is not sufficiently broad to control the issue. Thus, no direct conflict exists and the court must apply the *Walker* analysis to subdivision 5.

 Plaintiffs argue that the Minnesota statute meets both *Walker* criteria. Plaintiffs contend that the procedures of subdivision 5, by restricting defendants' access to treating physicians, operate as an integral component of the balance wrought by the Minnesota legislature in the area of physician-patient privilege, thereby meeting the first element of the *Walker* analysis. The physician-patient privilege "was never intended, however, to be used as a trial tactic by which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time." *Doe,* 99 F.R.D. at 128.

Subdivision 5 does not act as a conditional waiver of the physician-patient privilege but rather significantly liberalizes defendants' access to treating physicians once a patient waives the privilege by filing a medical malpractice action in state court. Most federal courts, when faced with the question of what constitutes appropriate contact between defendants and treating physicians once the privilege is waived, permit ex parte interviews as a valuable component of federal discovery law. *See, e.g., id.* at 127. In *Doe v. Eli Lilly,* the court allowed defense counsel in a drug liability case to interview plaintiffs' treating physicians without the presence of plaintiffs' attorneys, reasoning that:

> [t]he inchoate threat implicit in refusing or qualifying permission to speak to a witness in possession of privileged information operates to intimidate the witness, who is then placed in the position of withholding or divulging what he knows at his peril and is itself a species of improper influence. It also enables the party so wielding the privilege to monitor his adversary's progress in preparing his case by his presence on each occasion such information is revealed while his own preparation is under no such scrutiny.... it would be an abuse of the privilege to allow it to be used in such a manner which has no relation to the purposes for which it exists.

*Id.* at 128–29. The Minnesota Supreme Court's interpretation of subdivision 5 in *Blohm* also undercuts plaintiffs' claim that the informal interview procedures comprise an integral part of state privilege law. The court emphasized that it did not intend in prior decisions to discourage informal interviews and that subdivision 5 was enacted to provide defendants with the right to informally interview treating physicians in medical malpractice actions by eliminating plaintiffs' right to veto such interviews. *Blohm v. Minneapolis Urological Surgeons,* 449 N.W.2d 168, 169–70 (1989). The court did not characterize the procedures in subdivision 5 as reflecting the legislature's desire

---

**15.** The defendants do not address this analysis because they contend that the state and federal procedural laws directly conflict, thus federal procedural law must be followed.

to protect the physician-patient privilege or to balance conflicting interests but rather reflecting "a legislative intent to separate this kind of interview from discovery requiring court assistance or supervision." *Id.* at 170. Such interviews are merely an extension of the informal information gathering permitted under state law. *Id.* at 170. Based on the foregoing, subdivision 5 is not an integral part of Minnesota privilege law so as to preclude ex parte interviews of treating physicians in federal courts.

■■■ Plaintiffs argue that subdivision 5 meets the second *Walker* criterion because failure to follow its procedures may undermine *Erie*'s goals of preventing forum shopping and the inequitable application of laws. Plaintiffs contend that federal district courts have faced a similar choice of law question when analyzing a recent Minnesota statute that defines pleading procedures for punitive damage claims.[16] Plaintiffs urge the court to adopt the same reasoning used in the punitive damage pleading cases to analyze the applicability of subdivision 5.[17] The punitive damage pleading statute, however, is distinguishable from the informal interview statute. Before the pleading statute was passed, the punitive damages pleading requirements were the same under state and federal procedural law. The statute was enacted to minimize or eliminate unfounded claims for punitive damages in state courts by restricting the timing and method of pleading. *See, e.g., Kuehn v. Shelcore, Inc.*, 686 F.Supp. 233, 234 (D.Minn.1988) (stating that the punitive damage statute "is aimed at deterring past abusive pleading practices regarding punitive damages in order to address a perceived insurance crisis"); Cole, *Tort Reform—Toward Moderation*, 13 Wm. Mitchell L.Rev. 335, 339 (1987). Subdivision 5 was designed to liberalize discovery in medical malpractice actions brought in state court, but such discovery is already permitted in most Minnesota federal district courts. Thus, failure to follow the informal interview procedures in diversity actions does not undercut the policy behind the statute as failure to follow the pleading procedures would undercut the policies underlying the punitive damage statute.

The Minnesota federal district courts that apply the state punitive damage pleading procedures in diversity actions have also emphasized that failure to do so may promote forum shopping. If federal courts do not require those pleading procedures, plaintiffs are more likely to file suit in federal rather than state courts because the pleading requirements under the Federal Rules of Civil Procedure are much more liberal than those required under the new state statute. This concern is not present when analyzing the procedures provided by subdivision 5. Before subdivision 5 was enacted, Minnesota courts, under *Wenninger*, prohibited all informal interviews absent patients' consent. Thus, if plaintiffs sought to avoid informal interviews they were more likely to file in state court. Even with the liberalization of discovery, plaintiffs are still more likely to file in state court because the procedures under subdivision 5 are more restrictive than those permitted by most Minnesota federal district courts. A difference between state

16. The Minnesota statute provides that:
 Upon commencement of a civil action, the complaint must not seek punitive damages. After filing the suit a party may make a motion to amend the pleadings to claim punitive damages. The motion must allege the applicable legal basis under section 549.20 or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages.

 Minn.Stat. § 549.191 (1986).

17. *See, e.g., Security Savings Bank v. Green Tree Acceptance, Inc.*, 739 F.Supp. 1342, 1352 (D.Minn.1990) (following Minnesota punitive damage pleading procedures in diversity action); *Zeelan Indus., Inc. v. deZeeuw*, 706 F.Supp. 702, 704–05 (D.Minn.1989) (same); *Webster Truck & Caster Co. v. Nutting Co.*, No. 3–88–662 (D.Minn. Feb. 6, 1989) (1989 WL 222673) (same); *Kuehn v. Shelcore, Inc.*, 686 F.Supp. 233, 234–35 (D.Minn.1988) (same); *Fournier v. Marigold Foods, Inc.*, 678 F.Supp. 1420, 1422 (D.Minn.1988) (same).

and federal informal interview procedures may encourage defendants to remove to federal court, but such removal can hardly be considered impermissible forum shopping for purposes of *Erie* and *Walker* because such removal is already considered an out-of-state defendant's right pursuant to 28 U.S.C. § 1441.[18] Thus, failure to follow the procedures in subdivision 5 will not promote impermissible forum shopping.

Plaintiffs also contend that failure to apply the state informal interview procedures will defeat another *Erie* policy by promoting the inequitable application of law. Plaintiffs argue that defendants are "world renowned, and exert considerable pressure upon their peers" and that failure to apply the procedural safeguards of the Minnesota statute would be unfair for purposes of the *Walker* analysis. Such claims carry little force because most Minnesota federal district courts already permit ex parte interviews in all types of lawsuits, not just medical malpractice actions. Plaintiffs further argue that failure to follow these procedures would be inequitable because Minnesota and Wisconsin plaintiffs have relied on the protections afforded by the informal interview statute. The relative newness of the statute undercuts plaintiffs' reliance argument. Moreover, the statute was designed to broaden defendants' right to conduct informal interviews in state court by requiring plaintiffs' to sign authorizations. Failure to allow defendants equal access to plaintiffs' treating physicians may be viewed as an inequitable application of law. *See, e.g., Doe,* 99 F.R.D. at 128–29.

Based on the foregoing, the procedures outlined in the Minnesota informal interview statute do not represent an integral part of the state physician-patient privilege scheme nor will failure to follow these procedures promote forum shopping or the inequitable application of law. Thus, under the *Walker* test, a Minnesota federal court

sitting in diversity is not bound by the procedures of subdivision 5 and ex parte interviews are governed by federal procedural law, following the precedent of this and other Minnesota federal district courts. Accordingly, IT IS HEREBY ORDERED that:

1. The magistrate judge's order of October 2, 1990 is set aside as contrary to law; and

2. The defendants' motion to compel plaintiff Joyce Filz to sign an authorization permitting the defendants to communicate ex parte with her treating physicians is granted.

---

**18.** Section 1441 provides that:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if *none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*

28 U.S.C. § 1441(b).